[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14529

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2012
JOHN LEY
CLERK

D. C. Docket No. 8:09-cv-00307-VMC-TBM

126TH AVENUE LANDFILL, INC.,
a Florida corporation,
RICHARD L. HAIN, SR.,

Plaintiffs-Appellants,

versus

PINELLAS COUNTY, FLORIDA,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 7, 2012)

Before WILSON and MARTIN, Circuit Judges, and ALBRITTON,[*] District
Judge.

_____

[*] Honorable W. Harold Albritton, United States District Judge for the Middle District of
Alabama, sitting by designation.

PER CURIAM:

126th Avenue Landfill, Inc., and its sole shareholder Richard L. Hain, Sr. (collectively, "the Owners"), appeal a bench trial verdict denying relief in their civil suit alleging a taking without compensation by Pinellas County, Florida ("the County"). After review, we affirm on the ground that res judicata bars the federal courts from relitigation of a central issue in the Owners' takings claim.

We review de novo the district court's determinations of law, and we do not overturn the district court's findings of fact unless they are clearly erroneous. Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1504 (11th Cir. 1993).

The Owners argue that the County's failure in 1993 to renew a five-year permit allowing them to continue operating a landfill on their property in Pinellas County deprived the property of all its economic value. Since the County paid no compensation, the Owners contend that this was a taking in violation of the Fifth Amendment. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). The Owners' argument boils down to the following syllogism: (a) the County failed to renew the landfill permit; (b) the land has now been deprived of all of its economic value because it can only be used as a landfill; and (c) therefore, the County has committed a regulatory taking of the Owners' land.

2

As an initial matter, the County argues that the district court was barred from hearing the case on account of res judicata.[1] We agree.

This dispute has been ongoing since 1993, and a complete review of its procedural history is unnecessary to decide the case.[2] The important part is that

---

[1] The Owners argue that the County waived its res judicata defense by failing to raise it in a timely manner in the district court, and that the district court abused its discretion by allowing the County to amend its answer in order to raise that defense. We find no abuse of discretion on the part of the district court. Federal Rule of Civil Procedure 15(a) encourages a district court to "freely give leave [to amend pleadings] when justice so requires." Here, the district court permitted the addition of the res judicata defense, such that it was included in the pretrial order, giving full notice to the Owners in advance of trial.

[2] However, since no single source presents a complete list of this case's procedural history with citations, its most relevant portions are included here. After being denied a permit in 1993, the Owners' journey began by filing a Writ of Certiorari in the Circuit Court of the Sixth Judicial Circuit in Pinellas County, which was denied. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 93-1004-CI-88A, slip op. at 2 (Fla. Cir. Ct. Oct. 20, 1993). Plaintiffs then filed an inverse condemnation suit in Pinellas County Circuit Court, which was removed to the United States District Court for the Middle District of Florida, where Plaintiffs lost on the merits. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 94-1372-CIV-T-17C, slip op. at 1 (M.D. Fla. Nov. 7, 1996). However, that decision was vacated by the Eleventh Circuit on ripeness grounds because "the Florida courts ha[d] not had an opportunity to grant relief." 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 96-3743, slip op. at 4 (11th Cir. Mar. 6, 1998) (per curiam).
Pinellas County Circuit Court received the case back from the federal courts and dismissed it, but subsequently was reversed by the Florida Court of Appeals. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 94-4486-CI-11, slip op. at 2 (Fla. Cir. Ct. Apr. 20, 1999). The Florida Court of Appeals stayed the case so that the Owners could exhaust their administrative remedies with the County. 126th Ave. Landfill, Inc. v. Pinellas Cnty., 758 So. 2d 721, 722 (Fla. Dist. Ct. App. 2000). In 2000, the Owners submitted a landfill application to the County, which made no ruling until 2005, when the Pinellas County Circuit Court ordered the County to make a decision. The County granted the Owners only a two-year landfill permit to close the landfill, finally ending their twelve-year odyssey to exhaust administrative remedies. The Owners then ended their journey through the state courts in 2007, when Judge Logan found that they did not have a property interest in a landfill permit, and thus there could be no inverse condemnation. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 94-004486CI-11, slip op. at 9 (Fla. Cir. Ct. Aug. 16, 2007). The Florida Court of Appeals affirmed that order without opinion. 126th Ave. Landfill, Inc., v. Pinellas Cnty., 988 So. 2d 632, 632 (Fla. Ct. App. 2008).

the Owners did not exhaust their administrative remedies with the County until 2005, when the County refused to grant the Owners anything but a two-year landfill permit to close the landfill. And the Owners did not exhaust their state court claims until 2007, when Pinellas County Circuit Judge Walt Logan granted summary judgment in favor of the County on an inverse condemnation claim. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 94-004486CI-11, slip op. at 9 (Fla. Cir. Ct. Aug. 16, 2007).

In a takings case arising in Florida, a plaintiff must first exhaust administrative remedies, then seek inverse condemnation in state court; only if both of those are unsuccessful may a plaintiff attempt to bring suit in federal court under the Fifth Amendment's Takings Clause. Reahard v. Lee Cnty., 30 F.3d 1412, 1417 (11th Cir. 1994) ("[A] Florida property owner must pursue a reverse condemnation remedy in state court before his federal takings claim will be ripe.").

This reasoning stems from Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S. Ct. 3108 (1985), which "boils down to the rule that state courts always have a first shot at adjudicating a takings dispute because a federal constitutional claim is not ripe until the state has denied the would-be plaintiff's compensation for a putative

4

taking, including by unfavorable judgment in a state court proceeding." Agripost, LLC v. Miami-Dade Cnty., 525 F.3d 1049, 1052 (11th Cir. 2008). Indeed, when this Court first heard the Owners' claims in 1998, we dismissed their case stating that their takings claim could not be ripe until they were denied compensation by Florida courts. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 96-3743, slip op. at 3–4 (11th Cir. Mar. 6, 1998) (per curiam).

However, when a plaintiff seeks inverse condemnation in state court, she "faces the possibility that the legal or factual issues resolved by the state court might have preclusive effect [on federal courts] under the Full Faith and Credit Statute, 28 U.S.C. § 1738." Agripost, 525 F.3d at 1052. This is precisely what happened in Agripost, where the federal courts were bound by the state court's determination that the plaintiffs "did not have a property interest protected by either the state or federal constitutions." Id.

Because "[property] interests . . . are not created by the Constitution" but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law," the federal courts must look to state property law to determine whether a taking has occurred. Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 519, 107 S. Ct. 1232, 1260 (1987) (quoting Webb's Fabulous Pharmacies, Inc. v.

5

Beckwith, 449 U.S. 155, 161, 101 S. Ct. 446, 450 (1980)). In Agripost, the state court explicitly found that, under state law, the plaintiff had no recognized property right that had been taken. "[F]ederal courts apply the preclusion law of the state whose courts rendered the first decision," Agripost, 525 F.3d at 1052 n.3, and Florida's res judicata doctrine prevents relitigation where "(1) the parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication." Id. at 1055. Therefore, res judicata forbade the federal courts from relitigating the state court's conclusions of law or fact in Agripost. Id. at 1056.

In the current case, Judge Logan's opinion did not make a ruling per se on whether the County's acts violated the federal Constitution, but it did hold that the Owners had no property interest in the landfill permit. The decision to grant summary judgment to the County was based entirely on the holding from Osceola County v. Best Diversified, Inc., 936 So. 2d 55 (Fla. Ct. App. 2006). In Osceola County, a plaintiff landfill owner argued that the county's refusal to grant a landfill permit had effected a taking. Osceola Cnty., 936 So. 2d at 57–58. He proceeded to state court, arguing that he was entitled to compensation based on a theory of inverse condemnation. Id. However, the court found this argument

6

unavailing because under state law, the county "had the absolute legal right" to require the plaintiff to receive a permit in order to operate his landfill. Id. at 60. That is, "as a matter of law [the plaintiff] had no right to open the landfill." Id. at 66. Judge Logan, finding the opinion in Osceola County to be "controlling of the facts and law to be applied to the facts in this case," determined that the Owners here could not make out an inverse condemnation claim because they did not have a recognizable property interest in the landfill permit. 126th Ave. Landfill, Inc. v. Pinellas Cnty., No. 94-004486CI-11, slip op. at 9 (Fla. Cir. Ct. Aug. 16, 2007). This order was affirmed without opinion by the Second District Court of Appeal of Florida. 126th Ave. Landfill, Inc., v. Pinellas Cnty., 988 So. 2d 632, 632 (Fla. Ct. App. 2008).

Just like the federal court in Agripost, we are bound by the state court's final decision that Plaintiffs had no recognizable property interest in operating a landfill. Agripost, 525 F.3d at 1056. The state court's holding did not explicitly rule on a federal takings claim, but this does not matter. "Because a state court of competent jurisdiction held that [the Owners] did not have a compensable property interest, [their] federal takings claim necessarily fails." Id. We are bound by Judge Logan's determination—affirmed by the Florida Court of Appeal—that the

7

Owners did not have a property interest in a landfill permit.[3]  Thus, they cannot make out a claim for a taking under the federal Constitution.  Id.

This ruling does not preclude future landowners from having a federal court eventually hear a claim that state action amounted to a taking.  It merely requires that state courts get the first shot, and the subsequent application of the Full Faith and Credit statute may mean that future plaintiffs are ultimately precluded from then proceeding to federal court and making the same arguments a second time.  Id. at 1052.  Determining whether the state court ruling will have a preclusive effect on federal courts under the doctrine of res judicata will depend on the precise holding of the state court.  The combination of Williamson, the Full Faith and Credit Statute, and Florida's inverse condemnation process means that a federal court cannot hear a takings case where the Florida state court found that a plaintiff did not have a compensable property interest.

The federal district court ultimately reached the conclusion that there had

---

[3]  The Owners argue that under Florida law, res judicata is not a bar to litigation if invocation of the doctrine "will work an injustice."  deCancino v. E. Airlines, Inc., 283 So. 2d 97, 98 (Fla. 1973); Flesche v. Interstate Warehouse, 411 So. 2d 919, 924 (Fla. Dist. Ct. App. 1982).  Although Florida courts have not specified the nature or extent of injustice necessary to avoid the application of res judicata, the courts have applied the injustice exception when there has been an intervening change of controlling law.  See Flesche, 411 So. 2d at 923–24.  Here, the Owners have not argued that there has been any change in controlling Florida law since Judge Logan's August 2007 decision.  We thus conclude that the injustice exception to res judicata does not apply here.

been no taking, but <u>res judicata</u> should have obviated the need for a trial on the merits.  The judgment of the district court is **AFFIRMED**.